**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Sarah R. Lavelle, Esq. (93383)                                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
slavelle@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GABRIELLE FAVOROSO** | : | Civil Action No. |
| **120 Fillmore Street** | : | |
| **Bristol, PA 19007** | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **CITIZENS FINANCIAL GROUP, INC.** | : | |
| **d/b/a CITIZENS BANK** | : | |
| **15 Newtown Richboro Road** | : | |
| **Richboro, PA 18954** | : | |
| | : | |
| **One Citizens Plaza** | : | |
| **Providence, RI 02903** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Gabrielle Favoroso (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, brings this civil matter against Citizens Financial Group, Inc. d/b/a Citizens Bank (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### **THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Citizens Financial Group, Inc. d/b/a Citizens Bank is a banking institution with a location at 15 Newtown Richboro Road, Richboro, PA 18954 and with a headquarters located at One Citizens Plaza, Providence, RI 02903.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and retaliation against Defendant.

14. The Complaint was assigned a Charge Number 530-2018-01721 and was dual filed with the Pennsylvania Human Relations Commission.

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") dated August 18, 2018. Plaintiff requested the Right to Sue.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this

3

Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. In March 2016, Defendant hired Plaintiff as a Universal Banker at its Jamison, Pennsylvania location.

21. Four (4) days after Plaintiff was hired, Defendant transferred Plaintiff to its Southampton, Pennsylvania location.

22. Plaintiff was well qualified for her position and performed well.

23. In June 2016, Defendant promoted Plaintiff to Small Business Banker.

24. Plaintiff was well qualified for her position and performed well.

25. On September 21, 2017, Defendant transferred Plaintiff to its Richboro, Pennsylvania location.

26. At the Richboro, Pennsylvania location, Plaintiff reported to Joe Rumpf, Branch Manager.

27. On September 22, 2017, Mr. Rumpf asked Plaintiff if she had sexual relations with Jack Eckhardt, Branch Manager from Defendant's Southampton's location.

28. Plaintiff did not have sexual relations with Mr. Eckhardt, and she was shocked that Mr. Rumpf had asked her such an offensive question.

29. Plaintiff informed Mr. Rumpf that she did not have sexual relations with Mr. Eckhardt.

30. During Plaintiff's first week at Defendant's Richboro branch, Mr. Rumpf instructed Plaintiff to stop wearing leggings at work.

31. Plaintiff's apparel did not violate Defendant's dress code policy.

32. Plaintiff informed Mr. Rumpf that Adina LNU, Universal Banker, wears the same leggings, but in a different color.

33. Mr. Rumpf replied, "Adina doesn't have an ass like you."

34. Later that week, Mr. Rumpf instructed Plaintiff to not stretch at work because, "[he] can't stop staring at [Plaintiff's] boobs and doesn't want to be hard at work."

35. Plaintiff was offended by the comment, especially given that it had been made by her supervisor.

36. On September 26, 2017, Mr. Rumpf instructed Plaintiff to work in the ATM room with him.

37. Plaintiff complied with Mr. Rumpf's instructions.

38. Once inside the ATM room, Mr. Rumpf revealed to Plaintiff that he had an intimate relationship with the previous Small Business Banker, Kimberly Rivera.

39. Mr. Rumpf stated that he "fucked Kim" and that he had her transferred because she threatened to go to Human Resources about him.

40. Plaintiff interpreted Mr. Rumpf's statement as a warning not to report Mr. Rumpf's sexual harassment or else he would have her transferred similar to how he had transferred Ms. Rivera.

41. Mr. Rumpf then grabbed Plaintiff by the back of the head and forcibly kissed her.

42. Plaintiff denied Mr. Rumpf's advances, pushed him away and demanded that he stop.

43. Soon after, Steve Primavera, Relationship Banker, entered the ATM room to tell Plaintiff that she had a client waiting for her at the branch.

44. Plaintiff did not report Mr. Rumpf's sexual harassment because she was afraid of retaliation.

45. After Plaintiff met with the client, Mr. Rumpf summoned Plaintiff to his office.

46. Mr. Rumpf then asked Plaintiff if she had told her boyfriend about him trying to kiss her because he alleged that he had received a threatening phone call.

47. Plaintiff stated that she had not told her boyfriend what had happened.

48. Mr. Rumpf then instructed Plaintiff to delete all of the text messages exchanged between them. He then proceeded to stand behind her to ensure that she deleted the messages.

49. In October 2017, Mr. Rumpf sent Plaintiff sexually inappropriate text messages, including, but not limited to, requesting that she send him sexually explicit pictures; asking if she had a maid outfit; stating that her networking associate was her "sugar daddy"; and a pornographic video.

50. The text messages were offensive and unwelcome to Plaintiff.

51. Shortly afterwards, Kyle LNU, Universal Banker, gave Plaintiff a large client.

52. Mr. Rumpf told Plaintiff to "sit on Kyle's lap and treat him like Santa as a thank you."

53. Mr. Primavera, who overheard the comment, objected and told Mr. Rumpf that his comment inappropriate.

54. In response, Mr. Rumpf stated, "I don't care" and "I'm a HR nightmare."

55. In or around mid-October 2017, Plaintiff was absent from work on the day that she had to submit her hours to Defendant.

56. Instead of notifying Plaintiff, Mr. Rumpf did not approve her hours, resulting in her not receiving a paycheck.

57. Mr. Rumpf then offered to give Plaintiff a $600 loan, which Plaintiff accepted because she could not afford not to receive her paycheck on time.

58. The following day, Plaintiff thanked Mr. Rumpf again for the loan.

59. Mr. Rumpf responded, "If you don't pay me next week, I get to squeeze them big titties."

60. Soon afterwards, Plaintiff asked Mr. Rumpf if a task needed to be done immediately for a client or if it could wait.

61. Mr. Rumpf instructed Plaintiff to do the task now or he would "bring [Plaintiff] back into the ATM room."

62. In addition, throughout October 2017, Mr. Rumpf told Plaintiff that she was performing well, but afterwards, he would text her about alleged performance deficiencies.

63. On October 25, 2017, Plaintiff met with Mr. Rumpf in his office and asked him about her performance due to him telling Plaintiff that she was performing well and then sending her text messages about alleged deficiencies.

64. Mr. Rumpf asked Plaintiff if she felt that he was retaliating against her.

65. Plaintiff told Mr. Rumpf that she felt that he was setting her up for failure.

66. Mr. Rumpf then stated that if he wanted to retaliate against Plaintiff, all he would have to do "is make one (1) phone call" to get Plaintiff terminated.

67. Mr. Rumpf made this statement to intimidate Plaintiff into not reporting the pervasive harassment and to put her on notice that the harassment would continue as long as she worked there.

68. On October 30, 2017, Plaintiff sent her resignation letter to Mr. Rumpf and Meghan Glasson, Regional Manager.

69. Plaintiff was forced to terminate her employment with Defendant due to Mr. Rumpf's sexual harassment and retaliation.

70. Defendants' harassment of Plaintiff was pervasive and regular.

71. Defendant humiliated, embarrassed, and subjected Plaintiff to mental distress and anguish through Mr. Rumpf's deliberate sexual harassment and creation of a hostile work environment.

72. As a result of the aforesaid detrimental treatment, Plaintiff developed emotional distress.

## COUNT I – SEX DISCRIMINATION
## (SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT)
## TITLE VII OF THE CIVILE RIGHTS ACT OF 1964, AS AMENDED

73. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

74. By the conduct set forth above of Defendant, by and through its managerial employee, Mr. Rumpf, Defendant engaged in unlawful employment discrimination.

75. Taken together, the acts outlined above constitute a hostile work environment based on sex.

    a. Plaintiff suffered intentional discrimination because of her membership in a protected class – female.

    b. Such discrimination was severe, pervasive, and regular.

    c. Such discrimination detrimentally affected Plaintiff.

    d. Such discrimination would have detrimentally affect a reasonable person of the same protected class in Plaintiff's position.

76. There existed in Defendant *respondeat superior* liability because the harassment was created by a supervisor with authority over Plaintiff and was above Plaintiff in the chain of command.

77. The unlawful employment practices outlined above were intentional.

78. Defendant is not entitled to an affirmative defense.

79. Defendant knew or should have known of the sexual harassment.

80. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

81. Indeed, upon information and belief, Defendant failed to discipline Mr. Rumpf for his misconduct.

82. As a result of Defendant's actions and conduct, Plaintiff has suffered emotional pain and distress, mental anguish, and loss of enjoyment of life's pleasures.

83. The above described acts of Defendant with regard to Plaintiff were egregious and were committed with a malicious, willful, and/or reckless indifference to the federally protected rights of Plaintiff.

84. Said acts of Defendant were committed by and through its senior management employee within his employment relationship with Defendant.

85. The extreme and outrageous acts of Defendant merit the imposition of punitive damages.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – SEX DISCRIMINATION
### (SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT)
### PENNSYLVANIA HUMAN RELATIONS ACT

86. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

87. By the conduct set forth above of Defendant, by and through its managerial employee, Mr. Rumpf, Defendans engaged in unlawful employment discrimination.

88. Taken together, the acts outlined above constitute a hostile work environment based on sex.

    e. Plaintiff suffered intentional discrimination because of her membership in a protected class – female.

    f. Such discrimination was severe, pervasive, and regular.

    g. Such discrimination detrimentally affected Plaintiff.

    h. Such discrimination would have detrimentally affect a reasonable person of the same protected class in Plaintiff's position.

89. There existed in Defendant *respondeat superior* liability because the harassment was created by a supervisor with authority over Plaintiff and was above Plaintiff in the chain of command.

90. The unlawful employment practices outlined above were intentional.

91. Defendant is not entitled to an affirmative defense.

92. Defendant knew or should have known of the sexual harassment.

93. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

94. Indeed, upon information and belief, Defendant failed to discipline Mr. Rumpf for his misconduct.

95. As a result of Defendant's actions and conduct, Plaintiff has suffered emotional pain and distress, mental anguish, and loss of enjoyment of life's pleasures.

96. The above described acts of Defendant with regard to Plaintiff were egregious and were committed with a malicious, willful, and/or reckless indifference to the statutorily protected rights of Plaintiff.

97. Said acts of Defendant were committed by and through its senior management employee within his employment relationship with Defendant.

    **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – SEX DISCRIMINATION
## (SEXUAL HARASSMENT – *QUID PRO QUO*)
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

98. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

99. Plaintiff is a member of a protected class (female).

100. Mr. Rumpf's sexual advances were unwelcome.

101. Plaintiff's reaction to his advances affected tangible aspects of her employment, including receiving her paycheck in a timely manner and her continued employment by Defendant.

102. Indeed, submission to the unwelcome conduct and sexual advances was a condition of Plaintiff's employment and receiving her paycheck in a timely manner.

103. Mr. Rumpf was a managerial employee of Defendant who had significant authority and decision-making, and the ability to eliminate Plaintiff's employment.

104. The unlawful employment practices outlined above were intentional.

105. Defendant engaged in the unlawful employment practices outlined above with malice or reckless indifference to the federally protected rights of Plaintiff.

106. As a result of Defendant's actions and conduct, Plaintiff has suffered emotional pain and distress, mental anguish and loss of enjoyment of life's pleasures, as well as damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – SEX DISCRIMINATION
## (SEXUAL HARASSMENT – *QUID PRO QUO*)
## PENNSYLVANIA HUMAN RELATIONS ACT

107. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

108. Plaintiff is a member of a protected class (female).

109. Mr. Rumpf's sexual advances were unwelcome.

110. Plaintiff's reaction to his advances affected tangible aspects of her employment, including receiving her paycheck in a timely manner and her continued employment by Defendant.

111. Indeed, submission to the unwelcome conduct and sexual advances was a condition of Plaintiff's employment and receiving her paycheck in a timely manner.

112. Mr. Rumpf was a managerial employee of Defendant who had significant authority and decision-making, and the ability to eliminate Plaintiff's employment.

113. The unlawful employment practices outlined above were intentional.

114. Defendant engaged in the unlawful employment practices outlined above with malice or reckless indifference to the federally protected rights of Plaintiff.

115. As a result of Defendant's actions and conduct, Plaintiff has suffered emotional pain and distress, mental anguish and loss of enjoyment of life's pleasures, as well as damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT V – RETALIATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

116. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

117. Plaintiff engaged in activity protected by Title VII when she rejected her supervisor's sexual advances.

118. Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

119. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

120. Defendant forced Plaintiff to terminate her employment as a result of her denying her supervisor's sexual advances.

121. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT VI – RETALIATION
### PENNSYLVANIA HUMAN RELATIONS ACT

122. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

123. Plaintiff engaged in activity protected by the PHRA when she denied her supervisor's sexual advances.

124. Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

125. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

126. Defendant forced Plaintiff to terminate her employment as a result of her denying her supervisor's sexual advances.

127. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Gabrielle Favoroso, requests that the Court grant her the following relief against Defendant:

(a)  Compensatory damages;

(b)  Punitive damages;

(c)  Emotional pain and suffering;

(d)  Reasonable attorneys' fees;

(e)  Recoverable costs;

(f)  Pre and post judgment interest;

(g)  An allowance to compensate for negative tax consequences;

(h)  A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII and the PHRA.

(i)  Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j)  Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k)  Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: November 16, 2018        **By:** _____
David M. Koller, Esquire
Sarah R. Lavelle, Esquire
Attorney ID Nos. 90119, 93383
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
slavelle@kollerlawfirm.com

*Counsel for Plaintiff*